ORIGINAL

*28*

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

NATHANEAL TAYLOR,

                Plaintiff,

-vs-

                                        CASE NO. 03-73595
                                        HON. PAUL BORMAN

CITY OF DETROIT, GREG EDWARDS;
BARBARA SIMON; ERNEST WILSON;
TERRILL SHAW; JAMES FISHER;
DWIGHT PEARSON; INDIVIDUALLY and
IN THEIR OFFICIAL CAPACITIES,
jointly and severally.

                Defendants.



---

LAW OFFICES OF McCALL & TRAINOR
BY: CHRISTOPHER J. TRAINOR (P-42449)
Attorney for Plaintiff
6557 Highland Road, Suite 105
Waterford, Michigan 48327
(248) 886-8650

CITY OF DETROIT LAW DEPARTMENT
BY: PAULA L. COLE (P31888)
Attorney for Defendants Fischer, Pearson,
Edwards, Kinney, Wilson, Miller, Keys and Simon
660 Woodward Ave.
1650 First National Bldg.
Detroit, MI 48226
(313) 237-3017

---

## SECOND AMENDED COMPLAINT

    Plaintiff, NATHANEAL TAYLOR, by and through his attorney, CHRISTOPHER J.

TRAINOR, for their complaint against the above Defendants, states as follows:

## PARTIES AND JURISDICTION

1. Plaintiff was at all times hereto a citizen of the United States, resident of Wayne County, State of Michigan.

2. Defendant, City of Detroit, is a governmental subdivision under the laws of the State of Michigan.

3. Defendants, City of Detroit police officers, were at all times mentioned herein employed by the City of Detroit and were acting within the scope of his/her employment, under color of law, and were assigned to the Detroit Police Department.

4. Defendants, certain unknown other City of Detroit police officers, were at all times mentioned herein, employed by the City of Detroit and were acting within the scope of his/her employment, under color of law, and were assigned to the Detroit Police Department.

5. All of the events giving rise to this lawsuit occurred in the City of Detroit, County of Wayne, State of Michigan.

6. At all material times, Defendants acted under color of state law, statutes, ordinances, policies, procedures, and usages of the State of Michigan, County of Wayne, City of Detroit.

7. Jurisdiction is vested in this Court pursuant to 28 U.S.C. §1331 [federal question], 28 U.S.C. §1343 [civil rights].

8. Plaintiff's claims arise pursuant to federal statute 42 U.S.C. §1983, the Fourth and Fourteenth Amendments of the United States Constitution, and the statutes and common law of the State of Michigan.

2

## FACTS

9. Plaintiff incorporates by reference all the paragraphs in this complaint.

10. On March 28, 2000 Ahmad Joyce (Joyce) was murdered in a house where he sold drugs; his time of death is unknown.

11. On March 29, 2000 Defendant officers who were first at the crime scene found the steel front door of the house gated and steel bolted from the inside; they found Joyce in the dining room, shot in the back of the neck; they found bullet holes in the floor around Joyce's head; a bullet indentation on the back door; they found nothing at the crime scene to link Taylor to the murder; and they placed into evidence a pager and 2 cell phones.

12. Defendants did not investigate any phone numbers from the pager or 2 cell phones.

13. On March 29, 2000, prior to arresting Plaintiff, Defendants interviewed seven people, and discovered that not one saw the murder, identified Plaintiff, or connected Plaintiff to the murder.

14. On March 29, 2000, some of the interviewed witnesses told Defendants that Joyce was a gambler and drug dealer; they gave names of people {Plaintiff's was not one} who dealt drugs with Joyce; they named the person to whom Joyce owed $300.00; they named the person with whom Joyce had an argument three months prior; and they told Defendants that Joyce had $700 to $800 on him on March 28, 2000 (which was not found).

15. Additionally, Joyce's sister told Defendants she received a call from an unknown caller telling her that Joyce was dead in a house on Rochelle, and Defendants never checked her phone records.

16. One person, Willie Maddox (Maddox) who lives across the street from Joyce, told Defendants that he saw two men arguing with Joyce, but he could not identify them.

3

17.   Ignoring all of the above evidence, Defendants, on March 29, 2000, around 4:30 p.m., went to Plaintiff's private residence and asked if a dark skinned man 6 feet tall was there, and were told no one lived there that fit their description.

18.   At that point Defendant officers, having knowledge of only the above stated facts, without a warrant and without consent, forcibly entered and searched Plaintiff's home – the day after the murder.

19.   During their warrantless search, Defendants found nothing in Plaintiff's home that connected him to Joyce's murder - no clothing, no gun, no bullets, no drugs, no money, and nothing with blood stains.

20.   Meanwhile, Plaintiff, who had been outside when the officers arrived at his house, went to the front of his house and asked what was going on.

21.   Defendant officers grabbed his arm; told him to step off his front porch; moved him to the sidewalk; and told him to empty his pockets, which contained no evidence to connect him with Joyce's murder.

22.   Around that time, a female officer arrived at Plaintiff's home and told the officers to arrest Plaintiff.

23.   On March 29, 2000 around 5:00 p.m. Plaintiff, who has no criminal record, was arrested, and taken to 1300 Beaubien where he was fingerprinted and interrogated for approximately 5 hours.

24.   During this 5-hour interrogation, Plaintiff told Defendants that his sister was at his house on March 28, 2000 from around 10:30 p.m. until around 2:45 a.m. March 29, 2000, and could verify he was at home; police never interviewed his sister.

25.   Plaintiff repeatedly requested a lawyer and was repeatedly denied.

26. During Plaintiff's interrogation, Officer Ernest Wilson (Wilson) placed his gun on the table and threatened Plaintiff (who was handcuffed to the table), saying, "You're going to tell me or I'm going to put one in you just like you put in that guy".

27. Later, Wilson hit Plaintiff in the stomach with the butt of his gun and said, "You're going to tell the damn truth or I'm going to hit you or shoot you, so start telling me now".

28. Wilson then swung his fist at Plaintiff and when Plaintiff raised his non-cuffed hand to block the officer's punch, Wilson took off Plaintiff's cuffs and threw Plaintiff against the wall.

29. Again, Plaintiff said he had nothing to talk about, that he wanted a lawyer.

30. Wilson said, "You're not getting nothing. I'll be back".

31. Plaintiff sat in the interrogation room, handcuffed to the table for about 1½ hours before Wilson returned and said, "Aren't you sick of sitting here now, or do I have to beat your ass more".

32. Defendants then told Plaintiff he was being questioned for murder and that someone could identify him.

33. At that point Plaintiff demanded to be put in a line-up, instead Wilson said, "You think you're a smart ass. You can stay here for a couple of hours and think about it".

34. The line-up was never conducted.

35. On March 29, 2000 at 7:15 p.m. Plaintiff, not Mirandized, and without counsel gave a statement regarding his actions and whereabouts on March 28, 2000 - not a confession.

36. On March 29, 2000 around 10:30 p.m. Plaintiff was placed in cell 62 next to Hillard Hampton (Hampton) and across the hall from Ameer Ross (Ross) who was in cell 74.

37.   Ross, who had been in custody since March 27, 2000, was allegedly there for purposes of testifying at a trial.

38.   Investigator Thomas knew Ross was in jail at their precinct because on March 27, & 28, 2000, he got Ross out of his cell three different times.

39.   Investigators, Wilson and Edwards, knew Ross was there; that he had 8-9 prior convictions for theft and larceny over the last ten years; that currently he had cases pending in Oakland County for larceny by conversion; and that he had been used as a snitch in the past.

40.   On March 30, 2000 at approximately 12:00 midnight until 1:30 a.m. Defendants again interrogated Plaintiff and ignored his requests for a lawyer.

41.   Investigator Wilson was not assigned to the case that Ross was allegedly there to testify on, yet on March 30, 2000 Detectives Wilson, Edwards, and Miller interviewed Ross seven (7) times.

42.   On March 30, 2000, Investigators Wilson and Edwards talked to Ross from around 12:00 noon to 1:15 p.m., during which Ross gave his first false statement at 1:00 p.m. implicating Plaintiff as Joyce's murderer.

43.   Ross's statement was given after Plaintiff had given his statement.

44.   Ross claimed that Plaintiff and his cousin went in the front door of Joyce's house after a customer left, and that Plaintiff's cousin stood at the front door with a 410 rifle.

45.   Ross claimed that Taylor and his cousin killed two people on Rochelle 2 weeks before Joyce was killed.

46.   Police did not investigate this information because they knew there were no killings on Rochelle two weeks prior to Joyce's murder.

6

47.   On March 30, 2000 at 5:00 p.m. Plaintiff gave a second statement that did not contradict his first statement but provided more detail, and that was corroborated by other witness statements.

48.   On March 30, 2000 from 6:00 p.m. until 8:25 p.m. Officers Wilson and Edwards again talked to Ross.

49.   On March 30, 2000 at 7:00 p.m., Hillard Hampton (Hampton) another Rochelle Street resident in jail at Beaubien, told Investigator Edwards that he didn't hear Taylor say he killed anyone; that Taylor said the guy was shot with a Mack 10; and Taylor's footprints were on Joyce's front porch.

50.   When Ross's and Hampton's statements were taken, Defendants already knew Joyce's front door was steel bolted, gated, and barricaded from inside; that Joyce was shot with a handgun that shot .22 caliber bullets; and that Plaintiff had an alibi.

51.   And, sometime before Plaintiff's first preliminary exam Defendants knew Plaintiff's gym shoes showed no bloodstains.

52.   On March 31, 2000, April 1, 2000, and April 2, 2000, officers Miller and Fisher talked to Ross 5 times.

53.   On April 1, 2000, Ross gave Officer Fisher a second statement that also was not credible and was not put into evidence at either of Plaintiff's preliminary exams or trials.

54.   Ross's second statement begins with: "On March 31, 2000, me and the guy in the cell next to me began talking," then goes on to give a different story than his first statement but with some similarities to his first.

7

55.    Incredibly, during Plaintiff's second trial, Ross denied ever making his second statement, and denied knowing anything about it even though he identified his signature at the bottom of the statement.

56.    On April 2, 2000, four days after his illegal arrest, Plaintiff was arraigned.

57.    On April 14, 2000 Plaintiff was in court in front of Judge C. Lorene Royster, and prosecutors Sally Moore and Demitria Brue, and the proceeding was adjourned to April 19, 2000.

58.    On April 19, 2000 Plaintiff's first preliminary exam was held in front of Judge Norma Dotson, with prosecutor Sally Moore.

59.    Not until November 27, 2000 did Plaintiff's first trial begin with Judge Patricia Fresard; the jury had been picked, but on the third day, the trial was dismissed at the prosecutor's request.

60.    Immediately upon the dismissal of Plaintiff's first trial, in the courtroom, Plaintiff was re-arrested on the same charges without any additional evidence.

61.    November 28, 2000 a warrant was signed stating the same charges.

62.    Plaintiff was arraigned a second time on November 29, 2000, on the same charges and with no additional evidence.

63.    Plaintiff was in front of Judge Donna R. Milhouse with prosecutor Michael King when his second preliminary exam was rescheduled.

64.    Plaintiff's second preliminary exam held on December 18, 2000 was in front of Judge Jeanette O'Banner-Owens with prosecutor Michael Cain, at which time a second trial was set for June 9, 2000.

8

65.   Incredibly, at Plaintiff's second preliminary examination, the officer in charge of the case, Sgt. Ernest Wilson, knew nothing of the witness statements mentioned above, nor was the information provided by these witnesses investigated by Defendants.

66.   Plaintiff's second trial did not begin until June 26, 2001 with a different Judge, Vonda Evans, and prosecutor William Rollstin.

67.   On July 2, 2001, fifteen months after his arrest, and after approximately 6½ hours of deliberation, the jury found Plaintiff not guilty.

**COUNT I**

**VIOLATION OF THE UNITED STATES CONSTITUTION**

**FOURTH AMENDMENT, 42 U.S.C. §1983**

**WARRANTLESS SEARCH AND SEIZURE WITHOUT PROBABLE CAUSE**

68.   Plaintiff incorporates by reference all of the paragraphs in this complaint.

69.   The Fourth Amendment of the United States Constitution establishes that Plaintiff has the right to be free from deprivation of life, liberty and bodily security without due process of law and to be free from unreasonable searches and seizures.

70.   At all material times, Defendants acted under color of law and unreasonably when they violated Plaintiff's Fourth Amendment rights and forcibly entered and conducted a warrantless search of Plaintiff's home, and arrested Plaintiff at his home without probable cause or exigent circumstances.

71.   Defendants acted unreasonably and failed in their duty to investigate the alleged crime when they arrested Plaintiff without considering the totality of the circumstances.

72.  Defendants acted under color of law and are not entitled to qualified immunity because they violated Plaintiff's clearly established Fourth Amendment right to be free from unreasonable searches and seizures.

73.  Defendants are not entitled to qualified immunity because a reasonable officer would have known that a warrant or probable cause was required before they could search Plaintiff's home and arrest Plaintiff.

74.  Defendants are not entitled to qualified immunity for their non-testimonial in manufacturing probable cause.

75.  Defendants' illegal acts were the direct and proximate cause of Plaintiff's deprivation of liberty and illegal incarceration and prosecution.

76.  Due to Defendant's acts, Plaintiff's Fourth Amendment rights were violated and pursuant to 42 U.S.C. §1983. Plaintiff respectfully requests this court to award exemplary, compensatory, and punitive damages, plus costs, interests, and attorney fees.


### COUNT II

### VIOLATION OF THE UNITED STATES CONSTITION
### FOURTH AMENDMENT, 42 U.S.C. §1983
### FAILURE TO RELEASE FROM CUSTODY AND
### FAILURE TO PROVIDE TIMELY PROBABLE CAUSE

77.  Plaintiff incorporates by reference all of the paragraphs in this complaint.

78.  During a four-day period, Defendants interviewed Ross approximately seven (7) times, until they pieced together Ross's false statement; the only piece of evidence Defendants were ever able to trump up against Plaintiff.

79.     Defendants did not provide a timely probable cause hearing because they delayed
        Plaintiff's arraignment 4 days. The delay was because they lacked probable cause to
        arrest him from the beginning, and without Ross's coerced false statement they would
        have had to release Plaintiff from custody.

80.     Plaintiff's first preliminary exam was not until April 19, 2000.

81.     Plaintiff's second arraignment was on November 29, 2000 and his second preliminary
        exam was December 18, 2000 at which time the prosecutor did not present any additional
        evidence from the first preliminary exam.

82.     Defendants violated Plaintiff's Fourth Amendment rights when they failed to release
        Plaintiff from custody and failed to provide two timely probable cause hearings.

83.     Defendants' illegal acts were the direct and proximate cause of Plaintiff's incarceration
        and untimely probable cause hearings.

84.     The facts as set forth in the preceding paragraphs constitute a violation of Plaintiff's
        Fourth Amendment rights and pursuant to 42 U.S.C. §1983, Plaintiff respectfully
        requests this court to award exemplary, compensatory, and punitive damages, plus costs,
        interests, and attorney fees.


### COUNT III

#### VIOLATION THE UNITED STATES CONSTITUTION

#### FOURTH AMENDMENT, 42 U.S.C. §1983

#### MALICIOUS PROSECUTION/RETALIATION

85.     Plaintiff incorporates by reference all of the paragraphs in this complaint.

86.     At all times relevant, Plaintiff was incarcerated from March 29, 2000 until July 2, 2001.

11

87. As stated in the above-mentioned facts, Defendants had neither actual knowledge nor probable cause to believe a charge of murder would succeed when they initiated a malicious prosecution of Plaintiff that ended in an acquittal.

88. Defendants threatened Plaintiff with retaliation, that either he would confess to Joyce's murder, or give them the information they needed, or they were going to see to it that he was convicted and sentenced for life.

89. Defendants failed to properly investigate; they fabricated evidence, manufactured probable cause, incarcerated and conspired with others to maliciously prosecute Plaintiff.

90. Four days after his arrest Plaintiff was arraigned, and that was only because Defendants after having talked to Ross about seven times, had coerced Ross's statement, and pieced together a fabricated probable cause.

91. In order to establish probable cause to obtain an arrest warrant, Defendants falsified Ross's already false statement and deliberately did not provide exculpatory information from the other statements they submitted to the court.

92. Defendants improperly influenced the magistrate and prosecutor to file charges against Plaintiff for murder when they knowingly submitted false information to the court to establish probable cause.

93. On November 27, 2000, at Plaintiff's first trial, the jury had been picked but at the prosecutor's request the trial was dismissed without prejudice.

94. On November 29, 2000 Plaintiff was arraigned for a second time in front of a different judge with a different prosecutor, on the same charges, and with no additional evidence.

95. Then on December 18, 2000 Plaintiff received his second preliminary exam before a different judge, with a different prosecutor, and with no additional evidence presented.

96.    Plaintiff's second trial began on June 26, 2001, in front of a different judge, with a
       different prosecutor who presented no additional evidence to link Plaintiff to Joyce's
       murder than was presented at his two preliminary exams. On July 2, 2001 a jury
       unanimously acquitted Plaintiff.

97.    Defendants violated Plaintiff's Fourth Amendment right, and as a result of their above-
       mentioned acts, Defendants were the direct and proximate cause of Plaintiff's malicious
       prosecution.

98.    The facts as set forth in the preceding paragraphs, Defendants maliciously prosecuted
       Plaintiff and violated his Fourth Amendment rights, therefore, pursuant to 42 U.S.C.
       §1983, Plaintiff respectfully requests this court to award exemplary, compensatory, and
       punitive damages, plus costs, interests, and attorney fees.


**COUNT IV**

**VIOLATION OF THE UNITED STATES CONSTITUTION**

**FOURTH AMENDMENT, 42 U.S.C. §1983**

**EXCESSIVE FORCE**

99.    Plaintiff by reference incorporates all of the paragraphs in this complaint.

100.   Analyzing excessive force under the Fourth Amendment requires an objective
       reasonableness standard in light of the totality of the circumstances.

101.   As previously stated, Plaintiff was at all times hand cuffed to the table in the interrogation
       room when Sgt. Wilson swung at him and Plaintiff blocked his punch. At that point,
       Wilson became angry, uncuffed Plaintiff, threw him against the wall and used the butt of
       his gun to hit Plaintiff in the stomach.

13

102. Considering that Plaintiff had no criminal history; was in an interrogation room; did not flee from the officers who were at his house but voluntarily approached them; and that Defendants had no probable cause to arrest Plaintiff, Sgt. Wilson's conduct was unreasonable.

103. Considering the totality of the circumstances, Defendants unreasonably used excessive force against Plaintiff and violated his Fourth Amendment.

104. Therefore, pursuant to 42 U.S.C. §1983, Plaintiff respectfully requests this court to award exemplary, compensatory, and punitive damages, plus costs, interests, and attorney fees

**COUNT V**

**VIOLATION OF THE UNITED STATES CONSITUTION**

**FOURTEENTH AMENDMENT, DUE PROCESS, 42 U.S.C. §1983**

**EXCESSIVE FORCE**

105. Plaintiff incorporates by reference all of the paragraphs in this complaint.

106. Plaintiff's Fourteenth Amendment Due Process protects him from arbitrary exercise of government power.

107. Excessive force analysis under the Fourteenth Amendment requires the threshold analysis that the alleged conduct "shocks the conscience" on a case-by-case basis.

108. Defendants' deliberately and with indifference violated Plaintiff's Fourteenth Amendment Due Process rights and "shocked the conscience" when they placed their gun on the table that Plaintiff was handcuffed to and verbally threatened to kill him.

109. Defendants' conduct violated Plaintiff's due process rights because it was so egregious it "shocks the conscience" that police officers who are sworn to uphold the law threatened and punched Plaintiff while he was in their custody being interrogated.

14

110.   For the above stated reasons, Plaintiff was denied Due Process as guaranteed by the
       Fourteenth Amendment of the United States Constitution and pursuant to 42 U.S.C.
       §1983 Plaintiff is entitled to damages for the injuries he suffered.

## COUNT VI

### VIOLATION OF THE UNITED STATES CONSTITUTION

### FOURTH & FOURTEENTH AMENDMENTS, 42 U.S.C. §1983, §1985

#### CONSPIRACY

111.   Plaintiff incorporates by reference all of the paragraphs in this complaint.

112.   Defendants acting in concert with fellow officers conspired to obstruct justice, had a
       witness perjure himself or knew his testimony was perjured, and interfered with
       Plaintiff's civil rights.

113.   At the time of Plaintiff's arrest, Defendants knew that Joyce was a drug dealer and owed
       $300 to Tre; that he had gambled it away; that he had $700 to $800 on him the day he
       was murdered; that three months prior he had a fight with Orlando; and that they did not
       investigate others they knew associated with the Joyce.

114.   After Plaintiff's arrest, the only witness to ever accuse Plaintiff of murdering Joyce, was
       Ross, who was incarcerated at 1300 Beaubien on the day of the murder; who was a 4th
       habitual criminal convicted 8-9 times for theft and larceny; who was untrustworthy; and
       yet he was a prior snitch for the government.

115.   Defendants who had nothing to do with Ross's alleged incarceration for a different
       murder trial, talked to Ross seven (7) times, and coached Ross and conspired to accuse
       Plaintiff of murder.

116. Due to their improper investigation of Joyce's murder, Defendants interfered with Plaintiff's civil rights and are not entitled to immunity from their conspiracy to falsify non-testimonial evidence.

117. For the above stated reasons Defendants violated Plaintiff's Fourth and Fourteenth Amendment rights and pursuant to 42 U.S.C. §1983, Plaintiff respectfully requests this court to award Plaintiff exemplary, compensatory, and punitive damages, plus costs, interests, and attorney fees.

### COUNT VII

### VIOLATION OF THE UNITED STATES CONSTITUTION

### FOURTEENTH AMENDMENT, DUE PROCESS 42 U.S.C. §1983

### RIGHT TO FAIR TRIAL AND FABRICATION OF EVIDENCE

118. Plaintiff by reference incorporates all of the paragraphs in this complaint.

119. Defendants interfered with Plaintiff's right to a fair trial when they failed to properly investigate, fabricated evidence, manufactured probable cause, and conspired with others to maliciously prosecute Plaintiff.

120. As previously set forth, Defendants by creating false information, manufactured probable cause and presented it to the court, then forwarded it to the prosecutor knowing that it was likely to influence a jury's decision and knowingly violated Plaintiff's constitutional right to a fair trial, thereby injuring Plaintiff.

121. Additionally, Defendants failed to investigate known leads pertaining to Joyce's murder and ignored what one investigating officer wrote, "This case is wide open."

122. Nevertheless, Defendants arrested Plaintiff; then coerced Ross, a former snitch, into making a statement they knew was false, and providing false testimony.

16

123. Then and only then, four days after Plaintiff's statement and two days after Ross's statement, did they request an arrest warrant.

124. In this warrant, they deliberately wrote false and incomplete information and presented it to the court. Without this false and incomplete information, the court would not have found probable cause to issue the warrant, and Defendants knew it.

125. Defendants' deliberate falsification of facts, and fabrication of probable cause denied Plaintiff his right to due process. As a result of Defendants acts, Plaintiff was incarcerated for many months; and among many other injuries, he lost his job, lost custody of his son, and incurred legal fees for a trial.

126. Therefore, pursuant to 42 U.S.C. §1983, Plaintiff respectfully requests this court to award Plaintiff exemplary, compensatory, and punitive damages, plus costs, interests, and attorney fees.

**COUNT VIII**

**VIOLATION OF THE UNITED STATES CONSTITUTION**

**FOURTEENTH AMENDMENT, DUE PROCESS, 42 U.S.C. §1983**

**MALICIOUS PROSECUTION/RETALIATION**

127. Plaintiff incorporates by reference all of the paragraphs in this complaint.

128. Defendants deliberately violated Plaintiff's Fourteenth Amendment Due Process rights and "shocked the conscience" when they in order to legitimize their illegal arrest of Plaintiff, they knew or coerced a former snitch into providing a false statement and false testimony.

129. Defendants conduct "shocks the conscience" because they knew they lacked probable cause to arrest Plaintiff, and when he did not collapse and confess under their relentless

**17**

interrogation, and they falsified their information to the court in order to establish probable cause.

130.    Defendants threatened Plaintiff with retaliation, that either he would confess to Joyce's murder, or give them the information they needed, or they were going to see to it that he was convicted and sentenced for life.

131.    Defendants conduct was deliberate and with malice.

132.    Therefore, pursuant to 42 U.S.C. §1983, Plaintiff respectfully requests this court to award Plaintiff exemplary, compensatory, and punitive damages, plus costs, interests, and attorney fees.

### COUNT IX

#### ASSAULT AND BATTERY

133.    Plaintiff incorporates by reference all of the paragraphs in this complaint.

134.    At all times, Defendants intentionally placed Plaintiff in reasonable apprehension of an immediate battery when Defendants broke into Plaintiff's home; hand cuffed and arrested him; placed a police revolver on the table to which Plaintiff was handcuffed and told Plaintiff they would kill him; threw him against the wall and hit him in the stomach with the butt of their gun, all the while refusing to honor his requests for a lawyer and insisting that he murdered Joyce.

135.    At all times during Plaintiff's interrogation on March 29, 2000, Plaintiff had one hand cuffed to a table in the interrogation room when Defendants intentionally swung at Plaintiff.

136.    Defendants above mentioned intentional conduct was unreasonable, unnecessary, excessive, committed without any legal justification to do so, and done solely for the

18

purpose of intimidating and coercing Plaintiff into a confession of a crime that he did not commit.

137. The aforementioned assaults and batteries were the proximate cause of Plaintiff's pain and suffering, humiliation, embarrassment, and mental anguish.

138. For the above reasons, Plaintiff respectfully requests this court to award Plaintiff exemplary, compensatory, and punitive damages, plus costs, interest, and attorney fees.

COUNT X

GROSS NEGLIGENCE

139. Plaintiff incorporates by reference all of the paragraphs in this complaint.

140. That the Defendants, police officers, heretofore mentioned were acting as employees of the City of Detroit, and had a duty to perform their employment activities so as not to endanger or cause harm to individuals.

141. Notwithstanding Defendants' duties to perform their employment activities so as not to endanger or cause harm to individuals, Defendants breached their duty by acting indifferently or grossly negligent without regard to Plaintiff's constitutional rights and welfare.

142. Defendants knew or should have known that threatening Plaintiff with death to get a confession; conspiring with each other and an untrustworthy prisoner to fabricate evidence; and presenting this fabricated evidence to the court and prosecutor thereby initiating a malicious prosecution, was a breach of their duties and that harm would come to Plaintiff.

143. Defendants had a special relationship with Plaintiff in that: (1) they arrested him and were therefore responsible for his safety and welfare; (2) using their State power, they threatened and interrogated him knowing they had no evidence connecting him to their

19

murder investigation; (3) they threatened him with his life and with prison if he did not confess; (4) they saw him on a regular basis.

144.    Furthermore, Defendants had complete control over him; down to refusing him counsel and phone calls.

145.    Defendants breached their duty by failing to properly investigate a murder when they ignored known facts, they are: (1) Plaintiff did not match their own physical description of the suspect; (2) the deceased was a drug dealer who owed $300 to Tre; (3) the deceased's family members gave the officers names of people who had dealings with the deceased; (4) no one identified Plaintiff as being connected to the murder; (5) Plaintiff had no criminal record; (6) they had no evidence connecting Plaintiff to the crime scene even after their illegal search of his home; (7) their own report stated the case is "wide open"; (8) they knowingly provided false and incomplete information to the court to obtain a warrant.

146.    Plaintiff suffered damages as a result of Defendant's breach of their duties.

**COUNT XI**
**CITY OF DETROIT'S CONSTITUTIONAL VIOLATIONS**

147.    Plaintiff incorporates by reference all of the paragraphs in this complaint.

148.    Defendant, City of Detroit, acted recklessly and/or with deliberate indifference, when they practiced and/or permitted customs and/or policies that resulted in their violations of Plaintiff.

149.    These customs and/or policies included, but were not limited to:

   a.    Failure to train its police officers in the proper policies and procedures for use of excessive force;

20

b.   Failing to supervise its police officers so as to prevent violations of its citizens' constitutional rights;

c.   Failing to supervise, review and/or discipline police officers whom the City of Detroit knew or should have known were violating or were prone to violate citizens constitutional rights, thereby permitting and/or encouraging its police officers to engage in such conduct;

d.   Failing to institute proceedings that ensure its police officers conduct proper and legal investigations of crimes;

e.   Failing to institute proceedings that would safeguard against police conspiracies;

f.   Failing to train its police officers and institute policy pertaining to the use of government informants; and

g.   Failing to train police officers and institute policy against falsifying evidence.

h.   Allowing false arrests and imprisonment's of witnesses, suspects without probable cause and/or using false evidence.

150.   Defendants' conduct was so reckless as to demonstrate a substantial lack of concern for whether an injury resulted.

151.   Defendants' indifferent and grossly negligent acts and/or omissions were the direct and proximate cause of Plaintiff's pain and suffering, humiliation, embarrassment, and mental anguish.

152.   For the above reasons, Plaintiff respectfully requests this court to award Plaintiff exemplary, compensatory, and punitive damages, plus costs, interest, and attorney fees.

21

## COUNT XII

### FALSE ARREST

### FALSE IMPRISONMENT

153. Plaintiff incorporates by reference all of the paragraphs in this complaint.

154. Pursuant to the above-mentioned facts, Plaintiff's arrest was illegal and not based on probable cause.

155. At all relevant times, Defendants acted under color of law when they intentionally, and with malice falsely arrested and falsely imprisoned Plaintiff without actual knowledge or probable cause to believe that Plaintiff was guilty of any criminal activity throughout the pendency of the criminal charges against him.

156. Defendants never had information or evidence to establish probable cause before or after they arrested Plaintiff to the day of Plaintiff's acquittal by a jury, 15 months later.

157. Defendants conspiring together coerced Ross, a snitch, to make a false statement. Then and only then, four days after Plaintiff's arrest, did they go to court for a warrant.

158. To obtain the warrant, and continue Plaintiff's false arrest and imprisonment, Defendants gave the court incomplete and false information, thereby negating the possibility that the court could base the issuance of a warrant on the totality of the circumstances.

159. Without the incomplete and false information on their application to the court, Defendants would not have been able to show probable cause.

160. For the above reasons, Plaintiff respectfully requests this court to award Plaintiff exemplary, compensatory, and punitive damages, plus costs, interest, and attorney fees.

## COUNT XIII

### MALICIOUS PROSECUTION

161. Plaintiff incorporates by reference all of the paragraphs in this complaint.

162. Defendants initiated a criminal prosecution against Plaintiff that terminated in Plaintiff's favor. Defendants lacked probable cause and maliciously prosecuted Plaintiff instead of doing their duty and properly investigating all of their leads.

163. Defendants maliciously prosecuted Plaintiff because at the time of the arrest and continuing to the end of the second trial Defendants lacked probable cause to believe Plaintiff committed the crime and failed to investigate information provided to them by family members of the deceased.

164. As previously stated, at the time of Plaintiff's first arrest, Defendants could not link Plaintiff to Joyce's murder; Defendants' description of their suspect did not match Plaintiff's; their illegal search of Plaintiff's home turned up no evidence to connect Plaintiff with the crime; they found no evidence at the crime scene to link Plaintiff with the crime; they failed to investigate people to whom Joyce owed money; failed to investigate others who were named as having drug dealings with Joyce; and failed to investigate the people named in their own crime scene report.

165. Defendants lacked probable cause to arrest and prosecute, so they maliciously fabricated false evidence by coercing and/or influencing Ross to give a false statement that falsely implicated Plaintiff as the murderer.

166. Defendants knowingly provided this false statement and information to the court and prosecutor knowing the prosecutor would rely upon it to prosecute Plaintiff.

167. Defendants maliciously based their probable cause on Ross's statement whom the Defendants knew to be unreliable; that contained allegations known by the Defendants to be false, such as the murder weapon and that Plaintiff and his cousin went in the deceased's front door.

168. Notwithstanding that Defendants had sufficient time, from March 28, 2000 the date of the murder to November 27, 2000 the date of Plaintiff's first trial, to produce witnesses and evidence to prosecute Plaintiff; the prosecutor requested and received a dismissed without prejudice for lack of evidence to proceed.

169. At that point, Defendants maliciously and immediately re-arrested Plaintiff and arraigned him the next day on the exact same charges and with no additional evidence.

170. Plaintiff's second preliminary exam did not occur until December 18, 2000 in front of a different judge and different prosecutor with no additional evidence to link Plaintiff to Joyce's murder.

171. Then at Plaintiff's second trial, still did not introduce any additional evidence that linked Plaintiff to the murder, as evidenced by the jury's acquittal.

172. For the above reasons, Plaintiff respectfully requests this court to award Plaintiff exemplary, compensatory, and punitive damages, plus costs, interest, and attorney fees.

### COUNT XIV
### JUDGE SHOPPING

173. Plaintiff incorporates by reference all of the paragraphs in this complaint.

173. MCL §6.110(F) requires that a subsequent examination be before the same magistrate, if available, and that additional evidence be presented.

174. Plaintiff had his first preliminary examination on April 19, 2000 in front of Judge Norma Dotson and prosecutor Sally Moore.

175. Plaintiff's first trial was on November 27, 2000 in front of Judge Patricia Fresard, and the jury was picked.

176. During this trial, at some time, Judge Fresard, off the record, questioned why this case was in front of her with such lack of evidence to proceed against Plaintiff.

177. At some point, at the prosecutor's request, the trial was dismissed without prejudice.

178. Upon the dismissal, Plaintiff was immediately re-arrested on the same charges and with no additional evidence; arraigned for a second time, and returned to Wayne County Jail where he stayed until his second preliminary exam.

179. Plaintiff's second preliminary exam on December 18, 2000 should have been in front of Judge Norma Dotson with prosecutor Sally Moore. Instead, it was in front of Judge Jeanette O'Banner-Owens, and a new prosecutor, Michael Cain who presented no additional evidence than was presented at Plaintiff's first preliminary exam.

180. Michael Cain did not inform Judge O'Banner-Owens that Judge Fresard had already been assigned to the first trial, knowing that another judge would likely be assigned for the second trial.

181. On June 26, 2001, Plaintiff's second trial began in front of Judge Vonda Evans with prosecutor William Rollstin. Fifteen months after he was first arrested, on July 2, 2001, Plaintiff was found not guilty by a jury.

182. For the above reasons, Plaintiff respectfully requests this court to award Plaintiff exemplary, compensatory, and punitive damages, plus costs, interest, and attorney fees.

## DAMAGES AND RELIEF REQUESTED

183. Plaintiff incorporates by reference all of the paragraphs in this complaint.

184. According to the aforementioned facts and as previously stated, Defendants violated Plaintiff's rights as established by the Fourth and Fourteenth Amendments of the United States Constitution, and common law and State laws.

185. Defendants are the direct and proximate cause of the aforementioned violations and unlawful acts against Plaintiff, and pursuant to 42 U.S.C. §1983, Plaintiff has suffered the following injuries:

- Emotional and psychological injury;

- Lost wages;

- Out of pocket losses;

- Lost earning capacity;

- 15 months of unnecessary and illegal incarceration;

- Two arrests, two preliminary exams, and two trials;

- Humiliation, anxiety, fear and embarrassment;

- Injury to reputation;

- Loss of self-worth;

- Loss of custody of his son;

- Physical and economic loss relative court proceedings;

- Loss of quality and enjoyment of life;

- Other damages and injuries.

Wherefore, Plaintiff respectfully requests this court to award an amount that is fair, just, and reasonable against Defendants for exemplary, compensatory, and punitive damages, in an amount in excess of Seventy Five Thousand Dollars ($75,000) together with interest, costs, and attorney fees, pursuant to 42 U.S.C. § 1988.

Respectfully submitted,

CHRISTOPHER J. TRAINOR
Attorney for Plaintiff
6557 Highland Rd., Suite 105
Waterford, MI 48327

Dated:  April 13, 2004

**ORIGINAL**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NATHANEAL TAYLOR,

        Plaintiff,

-vs-                                                CASE NO. 03-73595
                                                   HON. PAUL BORMAN
                                                   MAG. JUDGE MORGAN

CITY OF DETROIT, RAMON SCOLA; JAMISON WALKER;
GREG EDWARDS; TAWYNA KING; BARBARA SIMON;
ERNEST WILSON; TERRILL SHAW; JAMES FISHER;
EDWARD VIVERETTE; KENNETH MAY;
EUNICE HUNTER; BILLY JACKSON; DWIGHT PEARSON;
INDIVIDUALLY and IN THEIR OFFICIAL CAPACITIES,

        Defendants.

---

| LAW OFFICES OF McCALL & TRAINOR | CITY OF DETROIT LAW DEPARTMENT |
|---|---|
| BY: CHRISTOPHER J. TRAINOR (P42449) | BY: PAULA COLE (P31888) |
| Attorney for Plaintiff | Attorney for Defendants |
| 6557 Highland Road, Suite 105 | 660 Woodward Ave, Suite 1650 |
| Waterford, Michigan 48327 | Detroit, MI 48226 |
| (248) 886-8650 | (313) 237-3017 |

---

**PROOF OF SERVICE**

STATE OF MICHIGAN   )
                    )ss.
COUNTY OF OAKLAND  )

        I, **EMILY SCHOLLER**, first being duly sworn, deposes and says that on the 15th day of April,
2004, she did serve Stipulated Order to Amend Complaint, Amended Complaint, along with this **PROOF
OF SERVICE** in the above-entitled matter upon the following individuals:

UNITED STATES DISTRICT COURT                              Via Personal Service
Attn: Clerk of the Court
231 W. Lafayette
Detroit, MI 48226

CITY OF DETROIT LAW DEPARTMENT                            Via U.S. First Class Mail
Paula Cole
660 Woodward Ave
1650 First National Building
Detroit MI 48226

by placing same in the United States Mail Box in Waterford, Oakland County, Michigan, in a sealed envelope
with postage fully prepaid thereon.

        I declare under the penalty of perjury that the statements contained above are true to the best of my
information, knowledge and belief.

                                        Emily Scholler
                                        Emily Scholler