# EXHIBIT F

Page 1

```
 1              UNITED STATES DISTRICT COURT

 2            FOR THE EASTERN DISTRICT OF MICHIGAN

 3                     SOUTHERN DIVISION

 4                        *   *   *

 5   NATHANEAL TAYLOR,

 6         Plaintiff,

 7

 8   - vs. -                Case No. 03-73595

 9                          Hon. Paul Borman

10

11   CITY OF DETROIT, GREG EDWARDS; BARBARA SIMON;

12   ERNEST WILSON; TERRILL SHAW; JAMES FISHER;

13   DWIGHT PEARSON; INDIVIDUALLY and IN THEIR

14   OFFICIAL CAPACITIES, jointly and severally.

15         Defendants.                              /

16

17   DEPONENT:    ERNEST WILSON, Continued

18   DATE:        Thursday, July 22, 2004

19   TIME:        10:20 a.m.

20   LOCATION:    660 Woodward, Suite 1650

21                Detroit, Michigan  48226

22

23   REPORTED BY: JENNIFER DIANE CLAUSON, CSR-6867

24                Empire Court Reporting

25                Telephone (248) 683-8516
```

1  Q. Okay. Did you have him sign a constitutional
2     rights form?
3  A. No, I did not.
4  Q. Okay. Anything else you discussed with him other
5     than going over to the house other than he may be a
6     suspect?
7  A. No.
8  Q. Okay. Did he say anything to you when you went to
9     get a consent to search?
10 A. Uh-huh.
11 Q. What did he say to you?
12 A. He said he don't have no problem signing a consent
13    to search. He ain't got nothing to do with
14    anything.
15 Q. Okay. He's got nothing to hide?
16 A. Consent to search and left.
17 Q. He's got nothing to hide, right?
18 A. That's what he said.
19 Q. Okay. At any time, have you ever been able to
20    gather any physical evidence in this case that
21    would indicate that Mr. Taylor committed the crime
22    of murder on Mr. Joyce?
23 A. When you say physical evidence, you're talking
24    about articles of a fact. We have evidence within
25    the case that has mentioned Nathaneal Taylor in the

1   area of Mr. Nathaneal Taylor having conflict with
2   the individual. Those are part of what I would say
3   are facts within the case.
4  Q. Okay. What about physical evidence?
5  A. Yeah. I have a dead body.
6  Q. Okay. Besides the dead body?
7  A. I don't recall any other physical evidence.
8  Q. Okay. So you believe the best evidence that you
9   have in this case is Mr. Taylor being in the area
10   having an argument with this person?
11 A. I can't say that in the words that you used at best
12   evidence.
13 Q. Okay.
14 A. I would say the tangible evidence that was used
15   based upon the investigator's report is what was
16   submitted to the prosecutors. Upon the prosecutor
17   signing the warrant, that's what they use as their
18   evidence. That doesn't have anything to do with my
19   decisions or anything else. So I can't even answer
20   to the best evidence that I have. It's the best
21   evidence that the state is pursuing.
22 Q. Okay. You prepare the request for warrant,
23   correct?
24 A. I sure do.
25 Q. Okay. And on the request for warrant, it's

1      important to put all the evidence that you have,
2      correct?
3   A. It's important not to tell a lie.
4   Q. Right.  And it's important not to omit things,
5      correct?  Because that's a lie also; isn't it?
6   A. Well, there's some things you just don't put in
7      there.
8   Q. Okay.
9   A. Like while I was at the scene, I saw a dog run
10     across the front porch.
11  Q. Right.
12  A. I'm not going to put that in there.  There's a lot
13     of things that you don't put in, but the tangible
14     things of what you've done in your investigation,
15     the statements that you take, the purposes of the
16     case is what's put into the investigator's report.
17  Q. Okay.  And in that respect, it's important not to
18     omit important facts that would directly pertain to
19     this case?
20  A. As you believe what you believe are facts are
21     facts.  I'm not omitting any facts to the case.
22  Q. Okay.  That would be inappropriate for you to omit
23     facts, correct?
24  A. It would be inappropriate for me to omit facts that
25     have anything to do with the preparation of the

1           investigator's report.
2     Q.    Okay.  Now, you believe this incident that may have
3           occurred between -- or this argument that occurred
4           between Mr. Taylor and the deceased was important,
5           correct?
6     A.    Correct.
7     Q.    Okay.  Were you able to determine that there was
8           any arguments between any other suspects in this
9           instance?
10    A.    No.  Not right then.
11    Q.    Okay.  At any time during your investigation and
12          before you submitted the warrant, were you able to
13          determine if there was any arguments between any --
14    A.    I determined that there was some problems that the
15          person had with other people concerning other
16          things, but nothing of a immediate nature to
17          warrant this situation to change.
18    Q.    Okay.  And that was your determination that you
19          made, correct?
20    A.    Absolutely correct.
21    Q.    Okay.  Would that be something that you should put
22          down on the request for warrant?
23    A.    No, it's not.
24    Q.    Why not?
25    A.    Because it doesn't have anything to pertain to this

1   situation.
2   Q. Okay. Who makes the decision on when you go
3      forward with the presentation of a warrant to the
4      prosecutor?
5   A. Usually the officer in charge of the case.
6   Q. And that would be you, correct?
7   A. That would be myself or it would be the -- it all
8      depends on what type of case it is also.
9   Q. How about in this case? Whose decision was it?
10  A. My decision.
11  Q. Okay. Assume that you have no statement from Mr.
12     Ross claiming that Mr. Taylor told him that Mr.
13     Taylor committed the murder. Would you have
14     submitted this warrant to the prosecutor?
15  A. It could have been a possibility, yes.
16  Q. Okay. Based upon what?
17  A. Based upon the investigation. There's always a
18     possibility. Based upon the situation with the
19     person -- what is the name of the gentleman?
20         MS. COLE: Gales? Hilliard Hampton?
21         THE WITNESS: The one that lived across the
22     street from the dope house.
23         MS. COLE: Maddox?
24         THE WITNESS: Maddox. Based upon some of
25     the things that he told me the allocation of this