UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NATHANEAL TAYLOR,

               Plaintiff,                        CASE NO. 03-73595

-vs-                                 PAUL D. BORMAN
                                      UNITED STATES DISTRICT JUDGE

CITY OF DETROIT, et al.,

               Defendants.
_____/

## ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### BACKGROUND:

Nathaneal Taylor ("Plaintiff") brings this suit against Detroit Police Officers Barbara Simon, Ernest Wilson, Terrill Shaw, Ramon Scola, Dwight Pearson and the City of Detroit (collectively "Defendants"). Plaintiff's counsel at oral argument indicated that the other named Defendants in this suit are no longer parties to this action. Plaintiff's complaint alleges fourteen counts of liability as follows:

COUNT I - violation of the Fourth Amendment to the United States Constitution pursuant to 42 U.S.C. § 1983/Warrantless Search and Seizure Without Probable Cause;

COUNT II - Violation of the Fourth Amendment to the United States Constitution pursuant to 42 U.S.C. §1983/Failure to Release from Custody and Failure to Provide Timely Probable Cause;

COUNT III - Violation of the Fourth Amendment to the United States Constitution

1

pursuant to 42 U.S.C. §1983/Malicious Prosecution/Retaliation;

COUNT IV - City of Detroit's Constitutional Fourth Amendment Violation pursuant to 42 U.S.C. §1983/Excessive Force;

COUNT V - Violations of the United States Constitution Fourteenth Amendment, Due Process, 42 U.S.C. §1983/Excessive Force;

COUNT VI - Violation of the United States Constitution Fourth and Fourteenth Amendments  42 U.S.C. §1983 and §1985/Conspiracy;

COUNT VII - Violation of the United States Constitution Fourteenth Amendment, Due Process 42 U.S.C. §1983//Right to a Fair Trial and Fabrication of Evidence;

COUNT VIII - Violation of the United States Constitution Fourteenth Amendment, Due Process, 42 U.S.C. §1983/Malicious Prosecution/Retaliation;

COUNT IX - Assault and Battery;

COUNT X - Gross Negligence;

COUNT XI - City of Detroit's Constitutional Violations;

COUNT XII - False Arrest and Imprisonment;

COUNT XIII - Malicious Prosecution;

COUNT XIV - Judge Shopping.

The undisputed facts are that Ahmad Joyce ("Decedent") was murdered on March 28, 2000.  He was shot execution style in the back of the head.  There were no witnesses to the murder.  Plaintiff was handcuffed and placed into police custody at his home on March 29, 2000. (Plaintiff's Ex. J, Scola's Dep. pgs. 18-20).   Defendants claimed that Plaintiff was only a witness to Decedent's murder.  (Plaintiff's Ex. M, Pearson's Dep. pg. 35).  Plaintiff was taken to

2

the police station and placed in a jail cell.  While in custody, Defendants found an outstanding

traffic violation by Plaintiff.  Plaintiff was held in jail and not allowed to post $186 bond for a

traffic violation.  Plaintiff's father, William Robinson, testified that on March 29, 2000 he went

to the police station to bond his son out, and was told Plaintiff had no bond.  (Plaintiffs Ex. R pg.

10).  Plaintiff's arrest card indicated that Plaintiff owed $186 in traffic warrants.  (Plaintiff's Ex.

FF).  Four days day later, Robinson was informed that Plaintiff was charged with murder.

Plaintiff testified that on March 28, 2000, the day of Decedent's murder, he and his friend

Lowis Lee purchased a $5.00 bag of marijuana from Decedent.  (Plaintiff's Response, Exh. A,

pgs. 24 and 38).  Plaintiff and Lee were upset at the amount of marijuana contained in the bag,

and according to Plaintiff, Decedent began yelling at them.  (*Id.* at 42).  Plaintiff testified that he

simply walked away and that this was the last time he had any contact with Decedent.  (*Id.*).

Defendant Ernest Wilson ("Defendant Wilson"), the officer in charge of the case, placed

Ameer Ross in a cell near Plaintiff.  Plaintiff alleges that Ameer Ross was a known liar and

"jailhouse snitch" who had been convicted of several crimes of dishonesty. (Plaintiff's Response

at 2; Plaintiff's Ex. DD).  Plaintiff further alleges that Defendant Wilson coerced Ross into

writing a false statement saying that Plaintiff confessed to the murder although he knew the

statement was a lie.  (*Id.*).  Plaintiff alleges that in Defendant Wilson's request for a warrant, he

made material misrepresentations and omissions. Plaintiff contends that Defendant Wilson

deliberately failed to inform the magistrate judge that Ross had an extensive criminal history

involving crimes of dishonesty.  (*Id.*).

According to Plaintiff's testimony, during his interrogation, Defendant Wilson placed his

gun on the table, and threatened Plaintiff who was handcuffed to the table telling him that he

better tell him how he shot Ahmad Joyce.  (Plaintiff's Ex. A, pgs. 78-79).  Plaintiff testified

further that Defendant Wilson said he was going to F*** Plaintiff up, and then stood up and

struck Plaintiff.  (*Id.* at 82).

Ameer Ross testified that Defendant Wilson intentionally moved him near Plaintiff's cell

to get information out of Plaintiff.  (Plaintiff's Response, Exh. C, pgs. 5, 23-24).  Ross testified

that the statement he gave to the police which stated that Plaintiff admitted to the murder was

false and that Defendant Wilson wrote the false statement and had Ross put it in his own writing

and sign it.  (*Id.* at 13-15).  Ross testified that Plaintiff never told him that he killed Decedent.

(*Id.* at 14-15).

Plaintiff alleges that due to his false arrest, he spent in excess of fifteen months in prison

for a crime he never committed.  Plaintiff was acquitted by a jury of the criminal charges on July

2, 2001.

Defendant Wilson submitted an arrest warrant for Plaintiff which provided as follows:

WITNESSES

#1.  A REPRESENTATIVE FROM THE WAYNE COUNTY MORGUE WILL

TESTIFY TO PERFORMING AN AUTOPSY ON THE COMPLAINANT AHMAD JOUCE,

(sic) LISTED ON MORGUE FILE #00-3211, AND DETERMINED TO BE FROM A SINGLE

GUNSHOT WOUND TO THE HEAD.

#2.  JERALAWN JOYCE, WILL TESTIFY TO RESPONDING TO THE SCENE AND

IDENTIFIED THE COMPLAINANT AS AHMAD JOYCE HER BROTHER.

#3.  WILLIE MADDOX, WILL TESTIFY THAT ON THE DATE OF 03-28-2000, HE

OBSERVED THE COMPLAINANT IN A (sic) ARGUMENT WITH TWO BLACK MALES

4

IN FRONT OF 13280 ROCHELLE.  MR. MADDOX MADE CONTACT WITH THE

COMPLAINANT AND THE COMPLAINANT RESPONDED THAT HE WAS O.K.

BECAUSE ONE GUY IS RETATDED (sic) AND THE OTHER ONE IS SHACKING (sic).

MR. MADDOX LEFT THE LOCATION AT THIS TIME AND LATER RETURNED TO HIS

HOME, WHILE WATCHING T.V. HEARD A GUNSHOT LOOKED OUTSIDE AND

NOTICED NOTHING.

#4.  LOWIS  LEE, WILL TESTIFY TO ON THE DATE OF 03-28-2000, HE ASKED

THE DEFENDANT NATHANEAL TAYLOR TO PURCHAS (sic) A BAG OF WEED FOR

HIM, THE DEFENDANT WENT AND PURCHASED THE BAG OF WEED FROM THE

ADDRESS OF 13280 ROCHELLE.  WHEN THE DEFENDANT RETURNED MR, (sic) LEE

A SECOND BAG AND TOLD HIM THE DEFENDANT MUST HAVE TAKEN SOME

WEED OUT OF THE BAG.  THE COMPLAINANT REQUESTED THAT HE BRING HIS

BOY BACK TO TALK ABOUT THE FIRST BAG.  MR, (sic) AND DEFENDANT WENT

BACK TO THE ADDRESS OF 13280 ROCHELLE AND A (sic) ARGUMENT INSUED (sic)

TO THE POINT THE DEFENDANT FELT HE WAS PUNKED OUT AND LEFT SAYING I

WILL TAKE CARE OF THIS.

#5.  AMEER ROSS, WILL TESTIFY TO BEING IN THE CELL BLOCK OF THE

DETROIT POLICE DEPARTMENT IN A CELL NEXT TO THE DEFENDANT, AND TO

HAVING A CONVERSATION WITH THE DEFENDANT.  WILL FURTHER TESTIFY

THAT DEFENDANT ADMITTED TO KILLING A BLACK MALE AFTER HAVING A

PROBLEM CONCERNING A BAG OF WEED, AND ALSO HE DID IT BECAUSE HE WAS

NOT GOING TO BE PUNKED OUT.  THE DEFENDANT ALSO REQUESTED MR, (sic)

5

ROSS TO CALL HIS GIRLFRIEND TELL HER TO GET RID OF THE GUN BECAUSE THE POLICE WERE GOING TO SEARCH HIS HOUSE.

#6.  HILLARD HAMPTON, WILL TESTIFY TO BEING IN THE CELL BLOCK OF THE DETROIT POLICE DEPARTMENT ON THE 9TH FLOOR AND OVER HEARING THE DEFENDANT TALKING ABOUT A SHOOTING OF (sic) THE SAME BLOCK HE LIVED ON.

#7.  REGINALD GAYLES, WILL TESTIFY TO BEING IN THE CELL BLOCK ON THE 9TH FLOOR OF THE DETROIT POLICE DEPARTMENT AND HEARING THE DEFENDANT TALKING ABOUT A MURDER AND ASK ANOTHER PERSON IN THE CELL BLOCK TO CALL HIS GIRLFRIEND AND TELL HER TO HIDE THE GUN.

#8.  POLICE OFFICER J, (sic) WALKER WILL TESTIFY TO MAKING THE POLICE RUN PERFORMING POLICE DUTIES AND SECURING THE SCENE AND SUBMITTING THE PROPER PAPER WORK WILL TESTIFY ALSO TO THE ARREST OF THE DEFENDANT.

#9.  POLICE OFFICER R, (sic) SCOLA, WILL TESTIFY TO THE SAME AS WITNESS #8.

#10.  POLICE OFFICER M, (sic) GROSS OF THE EVIDENCE TECH UNIT WILL TESTIFY AS TO HIS REPORTS AND THE DOCUMENTATION AND THE COLLECTION OF EVIDENCE OF THE CRIME SCENE.

#11.  INV. GREG EDWARDS WILL TESTIFY TO TAKEN STATEMENTS IN CONDUCTING FORMATS OF THE INVESTIGATION.

#12.  SGT. ERNEST WILSON WILL TESTIFY AS TO BEING THE OFFICE (sic) IN

6

CHARGE OF THE CASE, AND TAKEN A STATEMENT FROM THE DEFENDANT.

(Plaintiff's Ex. W).

There were two preliminary examinations held in this case.  The first, on April 19, 2000, Lowis Lee, Milton Maddox, Jr. Ameer Ross and Defendant Wilson testified.  Plaintiff was bound over.  The first trial was dismissed without prejudice.  A second preliminary examination was held on December 18, 2000, and Plaintiff was bound over again.

Ameer Ross testified at the second preliminary examination on December 18, 2000 as follows:

Q.  What did he tell you about what happened sir?

A.  Well, he said that he went to the store.  A guy down the street asked him to go to the store for him to get a 22 ounce beer, some weed, some black and mild cigars and the guy was supposed to buy some weed.

Q.  Okay. And then what happened?  What did he tell you then?

A.  He said he went to the store.  He came back to the guy, came back to the gentleman's house that sent him to the store.  He went back to the guy's house and the guy starting arguing with him.  He punked him out.  He say he didn't want to be punked out by the guy.  The guy didn't pay him for the weed that he was supposed to give him for going to the store.

Q.  Okay.  And then what happened?

A.  Him and his cousin came back the next day or later than night.  I'm not sure.  And he said that they waited on the porch until one of the customer came out, he described the house to me.  One of the guys - somebody let one of the customers left out, he ran in.  His cousin waited in between the door area and the guy started running toward the back.  He shot the guy in the head.

(Plaintiff's Ex. V, pgs. 25-26).

Plaintiff testified that while he was at the police station, he repeatedly requested a lawyer and a phone call, but was denied these rights.  (*Id.* at 58-59, 91, 113).

7

The instant case was originally filed in Wayne County Circuit Court and dismissed without prejudice.  Plaintiff re-filed the case in Wayne County Circuit, and the case was removed to this Court based upon Plaintiff's 42 U.S.C. §1983 claim.

Defendants filed their motion for summary judgment on February 3, 2005.  Plaintiff responded on February 24, 2005.  Oral argument was held on March 30, 2005.  Plaintiff also provided the Court with additional deposition transcripts on March 30, 2005.

## ANALYSIS

### A.    Standard

Pursuant to Federal Rule of Civil Procedure 56, a party against whom a claim, counterclaim, or cross-claim is asserted may "at any time, move with or without supporting affidavits, for a summary judgment in the party's favor as to all or any part thereof."  Fed. R. Civ. P. 56(b).  Summary judgment is appropriate where the moving party demonstrates that there is no genuine issue of material fact as to the existence of an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

> Of course, [the moving party] always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Id*. at 323; *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987).

A fact is "material" for purposes of a motion for summary judgment where proof of that fact "would have [the] effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties."  *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir.

8

1984) (quoting Black's Law Dictionary 881 (6th ed. 1979)) (citations omitted).  A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Conversely, where a reasonable jury could not find for the nonmoving party, there is no genuine issue of material fact for trial.  *Id.*; *Feliciano v. City of Cleveland*, 988 F.2d 649, 654 (6th Cir. 1993).  In making this evaluation, the court must examine the evidence and draw all reasonable inferences in favor of the non-moving party.  *Bender v. Southland Corp.*, 749 F.2d 1205, 1210-1211 (6th Cir. 1984).

If this burden is met by the moving party, the non-moving party's failure to make a showing that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial" will mandate the entry of summary judgment.  *Celotex*, 477 U.S. at 322-23.  The non-moving party may not rest upon the mere allegations or denials of his pleadings, but the response, by affidavits or as otherwise provided in Rule 56, must set forth specific facts which demonstrate that there is a genuine issue for trial. Fed. R. Civ. P. 56(e).  The rule requires that non-moving party to introduce "evidence of evidentiary quality" demonstrating the existence of a material fact.  *Bailey v. Floyd County Bd. of Educ.*, 106 F.3d 135, 145 (6th Cir. 1997); *see also Anderson*, 477 U.S. at 252 (holding that the non-moving party must produce more than a scintilla of evidence to survive summary judgment).

**B.    Discussion**

**1.      Qualified Immunity and §1983 Claim**

Defendants contend that the individual officers are entitled to qualified immunity because they did not violate Plaintiff's constitutional rights.  Under the doctrine of qualified immunity,

government officials who perform discretionary functions will not incur liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Hinchman v. Moore,* 312 F.3d 198, 205 (6th Cir. 2003). Defendants argue that probable cause to arrest existed when they detained Plaintiff, therefore they did not violate Plaintiff's clearly established constitutional rights.

Plaintiff was handcuffed when officer Jamison and Defendant Scola came to his house on March 29, 2000. (Plaintiff's Ex. J, Scola's Dep. pgs. 18-20). Defendant Simon testified that it is not appropriate to place a witness in handcuffs and take them into the police station, because it would be a false arrest. (*Id.* Ex. O, Simon's Dep. pg. 13). Defendant Pearson stated that when he took Plaintiff's statement on March 29, 2000, Plaintiff was only a witness, even though he was incarcerated. (Plaintiff's Ex. M, Pearson's Dep. pg. 35). Defendant Pearson also placed Plaintiff back in his jail cell after taking his statement on March 29, 2000. (Plaintiff's Supplement, Ex. A, Pearson Dep. pg. 43).

The Court finds that Plaintiff was arrested on March 29, 2000. *United States v. Mendenhall,* 446 U.S. 544 (1980) set forth the standard for a "seizure" under the Fourth Amendment. The *Mendenhall* Court stated that "a person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed he was not free to leave." (*Id.* at 554) (plurality opinion). Defendant Scola and Officer Jamison handcuffed Plaintiff on March 29, 2000, placed him in back of the scout car and took him to the police station. The Court finds that a reasonable person, in Plaintiff's position, would have believed he was not free to leave.

To have probable cause to make an arrest, "a police officer must take into account all the

10

evidence - both inculpatory and exculpatory." *Gardenhire v. Schubert,* 205 F.3d 303, 315 (6th

Cir. 2000).  The Sixth Circuit has held:

> Probable cause to make an arrest exists if, 'at the moment of the arrest, the facts and
> circumstances within the officers' knowledge and of which they had reasonably
> trustworthy information were sufficient to warrant a prudent man in believing that the
> arrestee had committed or was committing an offense.' The Court must view these facts
> 'from the perspective of a reasonable officer on the scene, rather than with the 20/20
> vision of hindsight.'  'In the § 1983 context, the question of whether probable cause
> existed is left for the jury, unless there is only one reasonable determination possible.

*Kahlich v. City of Grosse Pointe Farms, et. al.* 2005 WL 65515 (6th Cir. January 10,

2005) (internal citations omitted) (unpublished).

The Court examines what probable cause existed, if any, at the time Plaintiff was arrested

on March 29, 2000.  Defendants contend that Plaintiff was only a witness at this point.

However, the Court finds that Plaintiff was arrested because he was handcuffed, placed into the

scout car and taken to the police station.  The Court finds that there was no probable cause to

make that arrest because Defendants did not have a warrant and there were no other

circumstances justifying Plaintiff's arrest.  Defendant Scola, one of the officers who picked up

Plaintiff at his home on March 29, 2000 testified as follows:

Q.  You put handcuffs on him, correct?

A.  You know, I don't recall, but that's customary.

Q.  That was customary?

A.  Yeah, when you're in back of the scout car...

Q.  Okay.  Mr. Taylor was put in the back of the squad car, right?

A.  That's correct.

Q.  Okay.  Mr. Taylor was put in the back of the squad car with handcuffs, correct?

A.  That's correct.

Q.  Okay.  I'm not trying to trick you here, not trying to get you in trouble here.  I'm asking you what probable cause you had?

      MS. COLE: Asked and Answered.

      MR. TRAINOR: Okay.

      MS. COLE: So he answered the question.

A.  Homicide instructed me to take this person down for questioning.

Q.  Did you have a warrant in your possession?

A.  No.

(Plaintiff's Ex. J, Scola's Dep. pg. 18-19).

Defendant Shaw testified that there was nothing he could point to that indicated that there was probable cause to arrest Plaintiff on March 29, 2000.  (Plaintiff's Ex. H, Shaw's Dep., pg. 10).   Defendant Shaw also testified that he would not arrest a witness unless he had a warrant.  (*Id.* at 6).  The Court notes that Defendant Pearson testified that Defendant Shaw was the officer in charge of the murder scene.  (Plaintiff's Supplement, Ex. A, Pearson Dep. pg. 17).

Defendant Wilson testified there was probable cause to arrest Plaintiff based upon an argument described by Willie Maddux between Plaintiff and Decedent in which Plaintiff allegedly said "this is not finished."  (Plaintiff's Ex. E, Wilson's Dep. pg. 16, 30).  The Court finds this insufficient.

The Plaintiff described the situation as follows:

A.  He said my partner wants to talk to you.  I'm trying to - - I'm like what's going on, what's wrong.  He said my partner wants to talk to you, witness for questioning.  He gets down the sidewalk.  The guy walked from the side of the house.

Q.  The partners?

A.  Yes, his black partner.  He come down.  We goes to the street.  Miss - - what's her name?

Q. Simon?

A.  Miss Simon pulls up and says who's he.  The white guy say he just started work.  The black guy say he's about to get off; he's 30 minutes late.  They asked her again - - she asked them who was I.  He said a witness for questioning.  She said arrest him and they put cuffs on me and put me in the car.

Q.  You heard her say just arrest him?

A.  I was standing in her face while she's in the car - - in the red knocker car.

Q.  Did they put you in handcuffs?

A.  Yes, they did.

Q.  Did they tell you why you were arrested?

A.  He told me he couldn't tell nothing.  The only thing he was directed to do was arrest me.

(Plaintiff's Ex. A, Taylor's Dep. pg. 57).

The Court finds that Plaintiff has brought forth sufficient evidence demonstrating that there was no probable cause for Plaintiff's arrest on March 29, 2000 to survive summary judgment.  Further, Plaintiff has demonstrated that Defendants Shaw, Pearson and Scola all played a role in his illegal arrest.

While Plaintiff was in custody, the police discovered that he had outstanding traffic warrants.  However, Plaintiff testified that he was not allowed to make a phone call.  Further, Plaintiff's father, William Robinson testified that he was not allowed to post bail to release the Plaintiff.

The Court further finds that Plaintiff has brought forth sufficient evidence to survive summary judgment regarding the continuation of his detainment and the arrest warrant which

13

provided the basis for the probable cause determination at the preliminary examination hearings.

The Court finds *Hinchman v. Moore,* 312 F.3d 198 (6th Cir. 2003) instructive.  In *Hinchman,* the plaintiff was arrested by a Michigan state trooper after the trooper received a radio dispatch that plaintiff had assaulted a county police officer.  The plaintiff was bound over for trial following a preliminary hearing before a state court judge, who found probable cause for her arrest on the charge of felonious assault.  After a jury acquitted plaintiff, she filed a suit against the detectives who handled her case.  The plaintiff alleged that the defendants fabricated the facts to establish probable cause.

The Sixth Circuit noted that it must accept the facts as related by plaintiff as true for purposes of summary judgment.  The Sixth Circuit found that the facts did not establish probable cause to arrest and prosecute the plaintiff.  The Sixth Circuit also found that collateral estoppel did not apply to the state court preliminary hearing proceeding.   The Sixth Circuit found that: (1) a probable cause finding at the preliminary hearing did not bar a §1983 action; (2) the officers did not have probable cause for arrest; (3) the officers were not entitled to absolute witness immunity; and (4) the officers were not entitled to qualified immunity.  The Sixth Circuit stated "falsifying fact to establish probable cause to arrest and prosecute an innocent person is of course patently unconstitutional."  *Id.* at 205-06.

Important for our purposes, the Sixth Circuit in *Hinchman* held that collateral estoppel will not apply to a finding of probable cause at a preliminary examination if the plaintiff's claim is based upon the officer supplying false information.  *Hinchman* at 202.  On the other hand, there is a Third Circuit case which held:

> [v]iewing the facts in the light most favorable to the plaintiff, we conclude that
> [defendant] acted in reckless disregard for the truth in some, but not all, of his omissions

14

and assertions to the judge.  However, since none of these misstatements or omissions were material, in that the warrant would have established probable cause even if [defendant] had not made them, we conclude that [plaintiff's] right to be free from arrest without probable cause was not violated.

*Wilson v. Russo et al.,* 212 F.3d at 781 (3d. Cir. 2000).

The Sixth Circuit has recently provided:

a defendant must make a 'substantial showing that the affidavit is deliberately or recklessly false.  This Court has explained: 'A defendant who challenges the veracity of statements made in an affidavit that formed the basis for a warrant has a heavy burden. His allegations must be more than conclusory.  He must point to specific false statements that he claims were made intentionally or with reckless disregard for the truth.'

*U.S. v. Moncivais,* 401 F.3d 751, 757 (6th Cir. 2005) (citations omitted).

The Court finds that the cornerstone of the probable cause finding at the preliminary examination was Ameer Ross' testimony that the Plaintiff confessed his role in the murder to him.  The Court finds that without Ross' testimony, probable cause does not exist.  Plaintiff submits Ross' deposition in which he stated that Plaintiff never confessed the murder to him. Further, the Court finds that Ross had an extensive criminal history involving dishonesty. Ameer Ross testified as follows:

Q.  Okay.  Did he ever tell you that  - - tell her to hide guns or anything like that or - -

A.  Well, on the - - on the statement that officer - - I mean Sergeant Wilson showed me to write down basically had that on there to have her move a gun out of the house.

Q.  But did he ever say - -

A.  No.

Q. - - that to you?

A.  No, sir.

Q.  Okay.  So that statement was false, right?

15

A.  Yes.

Q.  Okay.  Let's go back here.  You knew some homicide detectives.  Ernest Wilson had you come up and meet with him and told you that he was going to move you by Nathaneal Taylor so you could get some information from him, correct?

A.  Right.

Q.  Okay.  You signed some statements that I've reviewed and it indicates that there's some information regarding a murder.  Where did you get that information from?

A.  I got that information from the statement that Sergeant Wilson had wrote out.

Q.  Okay.  So Sergeant Wilson writes out this statement, he tells you sign this correct?

A.  No, he didn't tell me to sign it.  He said for me to write it out in my handwriting and then sign it.

Q.  Okay.  So he wrote out a statement?

A.  Yes.

Q.  And then told you to copy it in your handwriting?

A.  Yes.

Q.  Okay.  And then you signed it?

A.  Yes, I did.

Q.  Okay.  Did Nathaneal Taylor ever tell you he killed anybody?

A.  No.  The only thing that Nathaneal Taylor did tell me was the guy that he went to the store for got killed.

Q.  Right.

A.  And that's what he was being questioned for down at homicide.

Q.  Okay.  He never told you he went in and shot anybody; is that correct?

A.  No.  He never said anything about that, but in the statement that Mr. Taylor - - I mean excuse me - - that Sergeant Wilson gave me, was if I'm thinking correctly, he said that the boy entered the house to shoot the guy.  He had a cousin on the porch.

16

Q.  Right.

A.  And there was thick plastic against the windows where a person couldn't actually see in.  That all of this was done because the guy supposedly punked Nathaneal Taylor out for - - Nathaneal went to the store for him to get him lunch and a beer.

Q.  Okay.  That's basically what the statement said, but Nathaneal didn't tell you all that stuff, did he?

A.  No, sir.

(Plaintiff's Ex. C, pgs. 13-17).

Again, the Request for Warrant submitted by Defendant Wilson stated the following:

WITNESSES

#1.  A REPRESENTATIVE FROM THE WAYNE COUNTY MORGUE WILL

TESTIFY TO PERFORMING AN AUTOPSY ON THE COMPLAINANT AHMAD JOUCE,

(sic) LISTED ON MORGUE FILE #00-3211, AND DETERMINED TO BE FROM A SINGLE

GUNSHOT WOUND TO THE HEAD.

#2.  JERALAWN JOYCE, WILL TESTIFY TO RESPONDING TO THE SCENE AND

IDENTIFIED THE COMPLAINANT AS AHMAD JOYCE HER BROTHER.

#3.  WILLIE MADDOX, WILL TESTIFY THAT ON THE DATE OF 03-28-2000, HE

OBSERVED THE COMPLAINANT IN A (sic) ARGUMENT WITH TWO BLACK MALES

IN FRONT OF 13280 ROCHELLE.  MR. MADDOX MADE CONTACT WITH THE

COMPLAINANT AND THE COMPLAINANT RESPONDED THAT HE WAS O.K.

BECAUSE ONE GUY IS RETATDED (sic) AND THE OTHER ONE IS SHACKING (sic).

MR. MADDOX LEFT THE LOCATION AT THIS TIME AND LATER RETURNED TO HIS

HOME, WHILE WATCHING T.V. HEARD A GUNSHOT LOOKED OUTSIDE AND

17

NOTICED NOTHING.

#4.  LOWIS  LEE, WILL TESTIFY TO ON THE DATE OF 03-28-2000, HE ASKED

THE DEFENDANT NATHANEAL TAYLOR TO PURCHAS (sic) A BAG OF WEED FOR

HIM, THE DEFENDANT WENT AND PURCHASED THE BAG OF WEED FROM THE

ADDRESS OF 13280 ROCHELLE.  WHEN THE DEFENDANT RETURNED MR, (sic) LEE

A SECOND BAG AND TOLD HIM THE DEFENDANT MUST HAVE TAKEN SOME

WEED OUT OF THE BAG.  THE COMPLAINANT REQUESTED THAT HE BRING HIS

BOY BACK TO TALK ABOUT THE FIRST BAG.  MR, (sic) AND DEFENDANT WENT

BACK TO THE ADDRESS OF 13280 ROCHELLE AND A (sic) ARGUMENT INSUED (sic)

TO THE POINT THE DEFENDANT FELT HE WAS PUNKED OUT AND LEFT SAYING I

WILL TAKE CARE OF THIS.

#5.  AMEER ROSS, WILL TESTIFY TO BEING IN THE CELL BLOCK OF THE

DETROIT POLICE DEPARTMENT IN A CELL NEXT TO THE DEFENDANT, AND TO

HAVING A CONVERSATION WITH THE DEFENDANT.  WILL FURTHER TESTIFY

THAT DEFENDANT ADMITTED TO KILLING A BLACK MALE AFTER HAVING A

PROBLEM CONCERNING A BAG OF WEED, AND ALSO HE DID IT BECAUSE HE WAS

NOT GOING TO BE PUNKED OUT.  THE DEFENDANT ALSO REQUESTED MR, (sic)

ROSS TO CALL HIS GIRLFRIEND TELL HER TO GET RID OF THE GUN BECAUSE THE

POLICE WERE GOING TO SEARCH HIS HOUSE.

#6.  HILLARD HAMPTON, WILL TESTIFY TO BEING IN THE CELL BLOCK OF

THE DETROIT POLICE DEPARTMENT ON THE 9TH FLOOR AND OVER HEARING THE

DEFENDANT TALKING ABOUT A SHOOTING OF (sic) THE SAME BLOCK HE LIVED

18

ON.

#7.  REGINALD GAYLES, WILL TESTIFY TO BEING IN THE CELL BLOCK ON
THE 9TH FLOOR OF THE DETROIT POLICE DEPARTMENT AND HEARING THE
DEFENDANT TALKING ABOUT A MURDER AND ASK ANOTHER PERSON IN THE
CELL BLOCK TO CALL HIS GIRLFRIEND AND TELL HER TO HIDE THE GUN.

#8.  POLICE OFFICER J, (sic) WALKER WILL TESTIFY TO MAKING THE POLICE
RUN PERFORMING POLICE DUTIES AND SECURING THE SCENE AND SUBMITTING
THE PROPER PAPER WORK WILL TESTIFY ALSO TO THE ARREST OF THE
DEFENDANT.

#9.  POLICE OFFICER R, (sic) SCOLA, WILL TESTIFY TO THE SAME AS
WITNESS #8.

#10.  POLICE OFFICER M, (sic) GROSS OF THE EVIDENCE TECH UNIT WILL
TESTIFY AS TO HIS REPORTS AND THE DOCUMENTATION AND THE COLLECTION
OF EVIDENCE OF THE CRIME SCENE.

#11.  INV. GREG EDWARDS WILL TESTIFY TO TAKEN STATEMENTS IN
CONDUCTING FORMATS OF THE INVESTIGATION.

#12.  SGT. ERNEST WILSON WILL TESTIFY AS TO BEING THE OFFICE (sic) IN
CHARGE OF THE CASE, AND TAKEN A STATEMENT FROM THE DEFENDANT.
(*Id.* Exh. W).

The Court finds that without Ross's testimony, the arrest warrant does not create
probable cause.  Further, the Court finds that an informant's tip alone, is not sufficient to
establish probable cause.  *United States v. Smith,* 783 F.2d 648, 650 (6th Cir. 1986).  There must

19

be some corroboration of the informant's reliability and veracity.  (*Id.*).  The Court finds that

Defendant Wilson has brought forth no evidence demonstrating that he attempted to corroborate

Ross' reliability or veracity, in fact, Ross testified that Defendant Wilson knew his testimony

was false.

 Reginald Gayles, a named witness on the arrest warrant, made his statement to the police

as follows:

> A young black male can (sic) into the cell block today around 12:00pm.  He started
> talking out loud about that he was in the cell for a homicide case and that he was being
> held for M-1.  Then he went on stay that they did not have anything on him.  He then
> started to talk about the person selling little bags of weed.  He also said that the dead guy
> and him did not like each other.  He went on stay that he could pull some plastic down
> and see inside of the house.  He said that he needed to call his girl to have her hide the
> gun.  He also talked about a Mack-10 and a 410 shotgun.  He sounded like he was
> describing how he went to the guy's house.

(Plaintiff's Ex. Y).

 The Court finds that this statement, without more, does not create probable cause.

Gayles' statement does not indicate that Plaintiff committed the murder.  Similarly, the Court

finds that the statement made to the police by Hillard Hampton, another named witness on the

arrest warrant, is insufficient to establish probable cause, particularly because he testified that

Plaintiff never told him he killed Decedent.  Hillard Hampton's statement to the police provided

in pertinent part:

> A. When I first heard the guy talking, he was talking to a guy in the cell across from his, I
> don't know his name but he was light skin and was in Cell #74.  He was saying that he
> was arguing with some guy over some change and that the police had his footprints off
> the front porch.  Then the guy was saying the dead boy was shot with a Mac-10.  The
> light skin guy was asking him how did he know it was a Mac-10 if he was not there and
> the guy answered 'that is what I heard.'  He kept trying to get the light skin to call his
> girlfriend to pick something up but the light skin guy said the phones were fucked up.
> The guy also said something about plastic windows and that is how you can look into the
> house and see everything, the weed house where he man got killed at.

Q. Did you ever hear the man say he killed someone at the weed house?

A. No, but I heard him say the guy who was shot, looked like he tried to run to the back door and was found in the back part of the house...

Q. Has anyone else on the cell block told you that this guy killed someone?

A. Not that I know of, he also said that he lived on the same block where I lived.

(Plaintiff's Ex. T).

Defendant Shaw indicated in his notes and observations that the case was "wide open." (Plaintiff's Ex. GG and HH).  Defendant Shaw also testified that it is proper procedure to run an informant's criminal history.  (Plaintiff's Ex. G, pg. 33).

The Court finds that Defendants are not entitled to qualified immunity in this case.  The Plaintiff brings forth evidence through Ross' deposition testimony, that his written statement which was used to establish probable cause, was false.  (Plaintiff's Ex. C, Ross' Dep. pgs. 14-15).  Plaintiff alleges that Defendant Wilson knew that Ross' written statement was false because Wilson authored the statement implicating Plaintiff and had Ross put the statement in his own handwriting.  (*Id.*).  Further, the Plaintiff testified that Defendant Wilson handcuffed him to the interrogation table, hit him, and even threatened to kill him.  (Plaintiff's Ex. A, Taylor's Dep. pgs. 78-79, 89).  Plaintiff also alleges that Defendant Wilson deliberately omitted the following facts from the warrant request:

(1) Plaintiff's shoes did not have bloodstains on them (Plaintiff's Ex. Q);

(2) Plaintiff's fingerprints were never lifted, and the gun found at Plaintiff's home was never linked to the murder (*Id.*);

(3) Ontario Joyce's statement where she indicated that Decedent sold drugs with three

other people, and that Decedent got into a fight with one of the individuals he sold drugs with
(*Id.* Ex. AA);

(4) Decedent owed an individual called "Tray" $300 because Decedent gambled the
money away (*Id.*);

(5) Tiffany Davis, Plaintiff's girlfriend gave a statement where she indicated that after
Plaintiff returned with the second bag of marijuana, they never left the house.  (*Id.* Ex. Z).

Further, the Defendants searched Plaintiff's home and found nothing linking him to the
murder.  (Plaintiff's Ex. Q).   The Court finds that these facts, viewed in a light most favorable to
Plaintiff, are sufficient for a reasonable jury to find that there was no probable cause to detain
Plaintiff and his Fourth Amendment Rights were violated.  The Court finds that collateral
estoppel does not apply to the findings of probable cause of the preliminary examinations
because material facts were omitted at the preliminary examination and in the warrant request.
The Court further finds that Defendants' actions, viewed in a light most favorable to Plaintiff,
are of a nature that a reasonable officer would known he was violating Plaintiff's clearly
established constitutional rights.  Accordingly, the Court finds that qualified immunity is not
available.

To state a claim under 42 U.S.C. §1983, the Plaintiff must show: (1) the allegedly
wrongful act occurred under the color of law; and (2) the challenged conduct deprived Plaintiff
of a right secured by the United States Constitution or a federal statute.  *Parratt v. Taylor,* 451
U.S. 527, 535 (1981).  As set forth above, the Court finds that Plaintiff has brought forth
sufficient evidence to withstand summary judgment regarding the question of whether his rights
under the Fourth Amendment were violated.  Further, it is undisputed that the Defendants

alleged wrongful acts occurred under the color of law.  Accordingly, the Court denies

Defendants' motion for summary judgment in regards to Plaintiff's §1983 claim as to all named

Defendants.  Further, Defendants seek summary judgment on Plaintiff's "intentional torts, false

arrest and imprisonment claims" because they argue that the lack of probable cause negates this

claims.  (Defendants' Motion, pg. 17).  The Court denies summary judgment on those grounds as

well, because as set forth above, there is a question of fact as to whether probable cause existed.

### 2.        Malicious Prosecution

The Sixth Circuit has recognized a separate constitutionally cognizable claim of

malicious prosecution under the Fourth Amendment.  *Thacker v. City of Columbus,* 328 F.3d 244

(6th Cir. 2003).  The Sixth Circuit in recognizing a malicious prosecution claim under the Fourth

Amendment followed *Spurlock v. Satterfield,* 167 F.3d 995 (6th Cir. 1999) which found

malicious prosecution where plaintiffs alleged that defendants wrongfully investigated,

prosecuted, convicted, and incarcerated them.   The Sixth Circuit in *Thacker* went on to state:

> [a]lthough it has yet to resolve the elements of a federal malicious prosecution claim, it is
> clear that a plaintiff must show, at a minimum, 'that there was no probable cause to
> justify [his] arrest and prosecution.'

*Id.* at 259.

In Michigan, "a person 'initiates' a prosecution for purposes of malicious prosecution if

he makes false statements to prosecuting officials or willfully conceals facts from them, causing

them to recommend issuance of a warrant."  *Bass v. Spitz,* 522 F. Supp. 1343, 1348 (E.D. Mich.

1981).

The Defendants argue that both Defendant Shaw and Defendant Wilson stated that the

entire file was provided to the prosecutor, and that two preliminary examinations were conducted

23

in this case.  Defendants contend that because there is no evidence that facts were concealed to the prosecutor, this claim should be dismissed.  On the other hand, the Court notes that Ameer Ross testified that his statement that Plaintiff confessed to him was false, and Defendant Wilson knew it was false, because he authored it.

The Court denies Defendants' motion for summary judgment on Plaintiff's malicious prosecution claim as to Defendant Wilson because Plaintiff has made a strong showing that there was no probable cause to justify his arrest and prosecution.  Further, Ross' testimony also creates a question of fact as to whether Defendant Wilson fabricated evidence against Plaintiff.  Accordingly, the Court will allow this claim to go to the jury as to Defendant Wilson.  The Court grants Defendants' Motion for Summary Judgment with this Count as to the remaining Defendants because Plaintiff not alleged they fabricated evidence.

### 3. Excessive Force Claim

In addressing an excessive force claim under §1983, the analysis begins by identifying the specific constitutional right allegedly infringed by Defendants' use of excessive force.  *Coy v. Phelps,* 286 F.3d 295, 299 (6th Cir. 2002).  There are three possible constitutional sources - - the Fourteenth, Eighth and Fourth Amendments.  (*Id.*).  Different standards apply depending on the Amendment.  (*Id.*).   The Eighth Amendment is not applicable here because it sets the standard for a convicted prisoner, and Plaintiff was not a convicted prisoner at the time of the alleged application of force.  The Fourth Amendment applies if the plaintiff was a free person at the time of the incident and the use of force occurred in the course of an arrest or other seizure of the plaintiff.  The Fourteenth Amendment has a higher "shock the conscience" standard than the Fourth Amendment and applies to situations not governed by the Eighth or Fourth Amendments.

24

The Court finds that the Fourth Amendment's standard applies.  In *Coy v. Phelps, supra,* the Court held that the use of excessive force during an arrest or other seizure must be analyzed under the Fourth Amendment and its reasonableness standard.  In instant case, the Court will analyze Plaintiff's claim of excessive force under the Fourth Amendment because the alleged force by Defendant Wilson occurred in the course of Plaintiff's arrest or seizure.  The Fourth Amendment employs a reasonableness standard for excessive force.  This standard "requires that the officer's use of force be objectively reasonable balancing the cost to the individual against the government's interests in effecting the seizure."  (*Id.*).

The Court must allow for "the fact that police officers are often forced to make split-second judgments - - in circumstances that are tense, uncertain and rapidly evolving - - about the amount of force that is necessary in a particular situation."  *Graham v. Connor,* 490 U.S. 386, 395 (1989).  The Court looks to (1) the severity of the crime; (2) whether the suspect posed an immediate threat to the safety of the officer or others; and (3) whether the arrestee actively resisted arrest or attempted to flee.  (*Id.* at 396).

According to Plaintiff's testimony, during his interrogation, Defendant Wilson placed his gun on the table, and threatened Plaintiff who was handcuffed to the table that he better tell him how he shot Ahmad Joyce.  (Plaintiff's Ex. A, pgs. 78-79).  Plaintiff testified further that Defendant Wilson said he was going to F*** Plaintiff up, and then stood up and struck Plaintiff.  (*Id.* at 82).  The Court finds that taking Plaintiff's testimony as true, none of the three factors noted above in *Graham* bode in Defendant Wilson's favor.  The Court particularly notes that Plaintiff posed no immediate threat to the safety of Defendant Wilson or others because he was handcuffed.  Further, there is no evidence that he was resisting arrest or attempting to flee.

The Court finds summary judgment inappropriate for Plaintiff's excessive force claim and that Defendant Wilson is not entitled to qualified immunity.  The Court acknowledges that in *Saucier  v. Katz,* 533 U.S. 194 (2001), the Supreme Court held that the analysis to determine whether qualified immunity applies is not the same question as whether an officer used excessive force.  In order to determine whether qualified immunity exists, the Court first must determine whether plaintiff has alleged facts which, taken in a light most favorable to him, show that the defendant officer's conduct violated a constitutional right.  If the answer is yes, the Court must then determine whether that right was clearly established that a reasonable officer, at the time the act was committed, would have understood that his behavior violated that right.

The Court should find that the first prong of *Saucier* is satisfied - - Plaintiff's allegations in a light most favorable to him, show that Defendant Wilson violated his rights under the Fourth Amendment.  Regarding the second prong, the Court should find that it is clear under *Graham v. Connor*, *supra,* that use of force contrary to the Fourth Amendment is excessive, and "clearly established." *Saucier* at 201-02.   However, under the second prong, the Court must further look to whether "it would be clear to a reasonable officer that his conduct was unlawful." *Id.*  202. The Sixth Circuit has held that striking a subdued citizen is unreasonable by its very nature.  *Cox v. Treadway,* 75 F.3d 230 (6th Cir. 1996).  Accordingly, the Court finds that Plaintiff, through his testimony, has brought forth sufficient evidence to survive summary judgment on his excessive force claim as to Defendant Wilson.  The Court grants Summary Judgment as to the other named Defendants because there is no allegation or evidence they applied excessive force on Plaintiff.

### 4.        §1983 Claim against City of Detroit

*Monell v. Department of Social Services of New York,* 436 U.S. 658, 694 (1978) holds

26

that municipal liability can attach where the constitutional violation results from the execution of municipality's policy or custom.  In *Monell,* the Supreme Court held that municipal bodies may be sued under §1983 provided that the alleged unconstitutional action implements or executes a municipal policy or custom.   The Court stated that the governmental policy not the unconstitutional execution by an employee of a constitutional policy must be the "moving force" behind the challenged conduct.  *Id.* at 694.  In other words, municipal liability for actions of its employees may not be based on a respondeat superior theory of liability.

The Plaintiff contends that there is substantial evidence demonstrating that the constitutional violations to Plaintiff were the result of the City of Detroit's custom or practice.  Plaintiff contends that it is the City's custom and/or practice to arrest witnesses, detain witnesses, threaten witnesses and retaliate against them.

The Court notes that Defendant Scola testified that handcuffing witnesses was customary.  (Plaintiff's Ex. J, Scola's Dep. pg. 18-19).  Officer Edwards testified that he heard of Detroit police officers making false promises to witnesses.  (Plaintiff's Ex. K, Edwards' Dep. pg. 37).  Tiffany Davis, Plaintiff's girlfriend testified that she was picked up and placed in a cell.  (Plaintiff's Ex. B, Davis' Dep. pg. 34).  Davis testified that she was threatened and told if she would be an accessory to murder if she did not cooperate.  (*Id.*).

The Court also notes that the Detroit Police Department recently changed its policy manual.  Sergeant Felix Kirk testified as follows:

Q.  At the time it was in regards to major crime scenes, to detain all witnesses.

Q.  Has that policy changed since you attended the Detroit Policy Academy?

A.  Yes.

27

Q.  When did it change?

A.  It changed within the last two, three months.

Q.  Do you know why it was changed?

A.  Yes.

Q.  Why?

A.  Because - - well, in regards to the illegal detention of witnesses and the arrest of witnesses.

Q.  And did that written policy come down in the past two, three months.

A.  Yes.

Q.  Can you describe or explain the policy to me as it is now?

A.  Basically, it is just that witnesses are asked to voluntarily give a statement and in many cases it is done now at the scene.  In some cases witnesses are voluntarily asked to come to homicide to give statements, they are not arrested and, once the statement is given, they are conveyed usually back to the location they were conveyed from.

(Plaintiff's Ex. EE, Kirk's Dep. pg. 6).

The Court finds that Plaintiff's evidence is sufficient under *Monell* to defeat summary judgment and that a reasonable jury could conclude that Defendant City of Detroit had a custom or policy of unconstitutional conduct.

### 4.    Sections 1983 and 1985 Conspiracy Claims

A civil conspiracy is "an agreement between two or more persons to injure another by unlawful action."  *Farhat v. Jopke,* 370 F.3d 580, 599 (6th Cir. 2004) (quoting *Weberg v. Franks,* 229 F.3d 514, 526 (6th Cir. 2000).  The Sixth Circuit has held that:

[e]xpress agreement among all the conspirators is not necessary to find the existence of a civil conspiracy.  Each conspirator need not have known all the details of the illegal plan or all of the participants involved.  All that must be shown is that there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an

28

overt act was committed in furtherance of the conspiracy that caused injury to the complainant.

*Weberg* at 526 (quoting *Hooks v. Hooks,* 771 F.2d 935, 944 (6th Cir. 1985).

Plaintiff brings his conspiracy claim under §1983 and §1985. The finds that Plaintiff's § 1983 conspiracy claim is actionable under the law. *See* Nahmoud, CIVIL RIGHTS AND CIVIL LIBERTIES LITIGATION, §2:21, p. 2-86 (4th ed. 2003) ("Even apart from the state action-color of law issue, an extensive body of §1983 conspiracy case law has developed..."). It is necessary for a § 1983 claim that a constitutional deprivation be alleged and proved. *Id.* (citing *Dixon v. City of Lawton*, 898 F.2d 1443, 1449 (10th Cir. 1990)).

To establish a conspiracy claim under §1983, "must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will be sufficient to state such a claim." *Guttierez v. Lynch,* 826 F.2d 1534, 1538 (6th Cir. 1987) (citations omitted).

The Court finds that Plaintiff has failed to bring forth sufficient allegations supported by facts to withstand summary judgment on his §1983 conspiracy claim. Plaintiff contends in his response that a conspiracy existed between Defendant Wilson and Ameer Ross who agreed to lie and blame Plaintiff for a murder knowing that such an agreement would cause Plaintiff to be incarcerated for life. The Court, however, finds that the Plaintiff's complaint does not allege that Ameer Ross was part of the conspiracy. Plaintiff alleges in his complaint:

> Defendants acting in concert with fellow officers conspired to obstruct justice, had a witness perjure himself or knew his testimony was perjured, and interfered with Plaintiff's civil rights.

(Complaint ¶112).

The Court finds that Plaintiff has not brought forth evidence demonstrating the existence

29

of an agreement, plan or single objective among the Defendants.  Accordingly, the Court grants

Defendants' motion for summary judgment regarding Plaintiff's §1983 claim.

Section 1985 is an independent right of action separate and distinct from that of § 1983.

Title 42 U.S.C. § 1985 states in pertinent part:

> If two or more persons in any State or Territory conspire ... for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; ... in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985.

The Court finds that the statute only applies to private conspiracies predicated on race or

class-based animus (i.e. equal protection).  *Davey v. Tomlinson,* 627 F. Supp. 1458, 1462 (E.D.

Mich. 1986).  The Court finds that Plaintiff does not allege that the conspiratorial acts stemmed

from a class or race based animus.  Accordingly, the Court grants Defendants' Motion for

Summary Judgment on Plaintiff's conspiracy claims under 42 U.S.C. §§ 1983 and 1985.

### 5.      Gross Negligence Claim

MCLA §691.1407 provides governmental immunity for state law tort claims if all of the

following are met:

> (a) The officer, employee, member, or volunteer is acting or reasonably believes he or she is acting within the scope of his or her authority.

> (b) The governmental agency is engaged in the exercise or discharge of a governmental function.

> (c)  The officer's, employee's, member's, or volunteer's conduct does not amount to gross negligence that is the proximate cause of the injury or damage.

30

(MCLA §691.1407 7(1), (2)).

Plaintiff contends that Defendants' conduct constituted gross negligence and therefore state governmental immunity will not shield Defendants. Gross negligence is defined under Michigan's governmental immunity statute as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." MCLA 691.1407(7)(a). The gross negligence must be the proximate cause of the injury. MCLA 691.1407(2). The existence or absence of gross negligence is a question of fact for the jury. *Ahlers v. Schebil,* 966 F.Supp. 518, 535 (E.D. Mich. 1997).

The Court finds that Plaintiff has brought forth sufficient evidence to create a genuine issue of material fact as to whether Defendants' conduct was grossly negligent. Plaintiff's evidence, viewed in a light most favorable to him, purports that: Defendants arrested him on March 29, 2000 although they admitted he was only a witness at that time, fabricated evidence against him; assaulted him; and deliberately ignored exculpatory evidence in his favor. Based on this evidence, the Court finds that a question of fact exists as to whether Defendants were grossly negligent. Accordingly, the Court denies Defendants' Motion for Summary Judgment based on Michigan governmental immunity grounds.

**CONCLUSION**:

The Court grants Defendants' Motion for Summary Judgment as to all Defendants on Plaintiff's COUNT VI, §§1983 and 1985 Conspiracy claim. The Court further grants Defendants' Motion for Summary Judgment as to all Defendants except for Defendant Wilson regarding COUNT III, Fourth Amendment, 42 U.S.C. §1983/Malicious Prosecution, COUNT

IV, Fourth Amendment, 42 U.S.C. §1983/Excessive Force, and COUNT XIII Malicious

Prosecution.  The Court denies Defendants' Motion for Summary Judgment as to all Defendants

with respect to the remainder of Plaintiff's claims.

**SO ORDERED.**


s/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated:  April 19, 2005

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on
April 19, 2005.


s/Jonie Parker
Case Manager